

NUMBERS 13-11-00124-CR & 13-11-00125-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **NATHAN THOMAS RODRIGUEZ,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Vela and Perkes
### Memorandum Opinion by Justice Benavides

Appellant Nathan Thomas Rodriguez appeals his jury conviction for evading detention (using a vehicle), a state jail felony, and aggravated assault with a deadly weapon, a second-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(1) (West 2011); TEX. PENAL CODE ANN. §§ 22.01; 22.02(a)(1) (West 2011). He was sentenced to

two years' imprisonment on the evading detention (using a vehicle) charge and twenty years' on the aggravated assault charge in the Texas Department of Criminal Justice's Institutional Division. By two issues, Rodriguez argues that (1) the evidence is insufficient on both charges to sustain the convictions, and (2) the punishments imposed by the jury are cruel and unusual under the United States Constitution. We affirm the trial court's judgments because (1) sufficient evidence supports Rodriguez's two convictions; and (2) Rodriguez did not preserve error on the issue of punishment.

## I. BACKGROUND

In the early morning hours of August 26, 2010, Rodriguez led several police officers on a high-speed chase through the streets of Victoria, Texas. Prosecutors presented video evidence to the jury taken from two different police cruisers involved in the pursuit.

The chase began when Officer Michael Leet observed three vehicles traveling east on Houston Highway, one of which was honking his horn. Officer Leet pursued the vehicles in his marked unit and later observed two of the vehicles turn south onto John Stockbauer Drive. One of the vehicles—a black Jeep Liberty—made an improper right turn onto John Stockbauer Drive. The Jeep Liberty, driven by Rodriguez, traveled down the wrong way of the two-way street. With his overhead lights engaged, Officer Leet eventually directed the vehicles onto the shoulder of Stockbauer Drive, where they stopped. Before Officer Leet spoke to any of the drivers, Rodriguez drove away and struck the other driver's vehicle in the process. Officer Leet pursued.

Rodriguez then traveled down Lone Tree Road at estimated speeds as high as 100 miles per hour. With several police units now in tow, Rodriguez disregarded traffic

signals at five intersections. At the intersection of Ben Jordan and Highway 59, Rodriguez struck the driver's side of a vehicle stopped at the intersection. As a consequence, Rodriguez's vehicle had a blown right front tire and became disabled just past the intersection. Rodriguez then jumped out of the Jeep Liberty, ran on foot, and jumped over fences before police detained him. The driver of the vehicle that was struck, Alexis Smith, complained of neck pain following the crash and was transported to the hospital, treated, and later released.

The State indicted Rodriguez on three charges: (1) evading detention with a vehicle, *see* TEX. PENAL CODE ANN. § 38.04(b)(1); (2) unauthorized use of a vehicle, *see* TEX. PENAL CODE ANN. § 31.07 (West 2011);[1] and (3) aggravated assault with a deadly weapon, to wit: an automobile, *see* TEX. PENAL CODE ANN. §§ 22.01; 22.02(a)(1). A Victoria County jury sentenced Rodriguez to two years' imprisonment for the evading detention charge and to twenty years' for the aggravated assault with a deadly weapon offense. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, Rodriguez contends that the evidence is legally insufficient to sustain his two convictions.

### A. Standard of Review

We review challenges to the sufficiency of evidence using the *Jackson v. Virginia* standard. *See* 443 U.S. 307, 318–19. Having concluded that "no meaningful distinction" exists between a factual-sufficiency and legal-sufficiency standard, the court of criminal appeals held that the *Jackson* standard is the "only standard that a reviewing

---

[1] Prosecutors later dropped the unauthorized use charge and successfully prosecuted Rodriguez on the remaining offenses, after he pleaded not guilty.

court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 893–903 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we inquire whether "[c]onsidering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Id.* at 899.

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). Finally, in our review we are to "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight given to their testimony." *Brooks*, 323 S.W.3d at 899.

## B. Discussion

### 1. Evading Detention

Rodriguez asserts that insufficient evidence supports the evading detention with a vehicle conviction because Rodriguez repeatedly denied evading detention on the witness stand, and as a result, the lesser-included offense of evading detention was submitted to the jury. *See* TEX. PENAL CODE ANN. § 38.04(a). We disagree.

A person is guilty of evading detention with a vehicle if:

4

(1) He intentionally flees

(2) from a person he knows is a peace officer;

(3) who is attempting to lawfully to arrest or detain him; and

(4) uses a vehicle while in flight.

*See id.*(a)–(b).

Reviewing the evidence, in a light favorable to the verdict, we conclude that the jury was rationally justified in finding Rodriguez guilty of this offense. *See Brooks*, 323 S.W.3d at 899. In this case, the State relied on two different police dashboard videos which depicted the entire ordeal. In the first video, Officer Leet's camera captured his initial attempt to detain Rodriguez and the other vehicle along John Stockbauer Drive. The video depicts Rodriguez and the other vehicle pull over to the side of the road and come to a complete stop, with Officer Leet's overhead lights conspicuously engaged. At that point, Rodriguez turned his vehicle around and sped away, with more officers joining the pursuit. Officer Leet's video depicts Rodriguez's disregard of traffic lights while other officers pursued him with engaged overhead lights.

We are also not persuaded by Rodriguez's argument that we should give greater credence to his testimonial denial that he did not see the officers because of loud music and tinted windows, since the trial court allowed a lesser-included offense instruction based upon this testimony. Jurors are the "sole judge of the witnesses' credibility and the weight given to their testimony," and we must defer to their determinations. *Brooks*, 323 S.W.3d at 899. The jury was within its province to give little or no weight to Rodriguez's testimony and convict him of the original charge over the lesser-included one based upon the evidence presented. A rational jury could conclude that

5

Rodriguez's actions in the video of pulling over and then speeding away showed that he intentionally attempted to flee from a Victoria police officer who was attempting to detain him. *See* TEX. PENAL CODE ANN. § 6.03(a) (West 2011) (defining intentionality as a "conscious objective or desire to engage in the conduct or cause the result").

### 2. Aggravated Assault with a Deadly Weapon

Rodriguez further asserts that evidence was insufficient to support the aggravated assault with a deadly weapon charge because he denied any intention to hurt Alexis, as well as the fact that the trial court submitted a lesser-included offense to the jury based on this testimony. *See* TEX. PENAL CODE ANN. § 22.01. We disagree.

A person commits aggravated assault with a deadly weapon if he:

(1) intentionally, knowingly, or recklessly;

(2) causes bodily injury to another;

(3) using a deadly weapon;

(4) during the commission of the assault.

*See id.*; § 22.02.

Our review of the record in a light favorable to the verdict allows for a conclusion that the jury was rationally justified in finding Rodriguez guilty of aggravated assault with a deadly weapon. *See Brooks*, 323 S.W.3d at 899. While the evidence may support Rodriguez's argument that he did not intend to hurt Smith, "intentional" is not the only culpable mental state required to convict him of aggravated assault. *See* TEX. PENAL CODE ANN. § 22.01 (listing knowingly and recklessly as alternative culpable mental states). A person acts "recklessly" if:

> He is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be

6

of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03.

Prosecutors relied heavily on the dashboard video footage taken by Officer Christina Moore's patrol unit. The footage, coupled with the video from Officer Leet's unit, depict Rodriguez driving through stop lights, operating on the wrong side of the road, and accelerating at speeds which officers estimated reached close to 100 miles per hour. The following colloquy illustrates Officer Moore's observations of Rodriguez's vehicle and its impact with Smith's vehicle:

| | |
|---|---|
| PROSECUTOR: | Based upon your speed could you tell me how fast the black Jeep Liberty was going? |
| OFFICER MOORE: | Ninety-five—Close to 100. |
| PROSECUTOR: | You said there was some other traffic, as you were traveling on Ben Jordan, towards Highway 59. Could you see any other vehicles in the vicinity? |
| OFFICER MOORE: | I could see one vehicle stopped at a light. I could see their rear light. |
| PROSECUTOR: | What color was the stop light the vehicle was at? |
| OFFICER MOORE: | It was red. |
| PROSECUTOR: | What was the [Rodriguez's] vehicle doing at the time of approaching? |
| OFFICER MOORE: | He was coming up straight behind the vehicle and I see, at the last minute, he swerves and swerves back into their vehicle—the back side of the vehicle. |
| PROSECUTOR: | Could you see if—was there any indication that a collision had occurred? |

7

OFFICER MOORE:     I could tell it could—I saw the car kind of ricochet off of it and, at that point, the light turned green and he kept on going.

Based on the video footage from both officers' units depicting Rodriguez's driving, along with Officer Moore's testimony, the record sufficiently supports a finding that Rodriguez drove his vehicle—with other drivers on the road—in a manner which was "reckless," considering the gross deviation from the standard of care that an ordinary and prudent driver would exercise.  *See* TEX. PENAL CODE ANN. § 6.03.  Accordingly, the evidence sufficiently supports the first element of the charged offense.

The State also elicited testimony from Smith and her treating emergency physician, Dr. Clyde Walrod, that she suffered from blunt trauma following a motor vehicle collision.  Smith presented to the emergency room with neck pain and swelling following Rodriguez's collision with her vehicle.  Dr. Walrod treated and released Smith with a prescription for a muscle relaxer.  Based on this evidence in the record, we conclude that it sufficiently supports a finding that Rodriguez's collision with Smith's vehicle caused bodily injury,[2] which satisfies the second prong of the charged offense.

The evidence also supports the jury's finding that Rodriguez's car was a "deadly weapon" for the purposes of the charged offense.  A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  TEX. PENAL CODE ANN. § 1.07(17)(B) (West 2011).  Here, video evidence of Rodriguez's operation of his vehicle and testimony from Officers Leet and Moore, as well as from Smith, allowed for a finding that the manner in which Rodriguez

---

[2] "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition."  *See* TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011).

8

used his vehicle was in such a way that was capable of causing serious bodily injury. *See Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (en banc) (holding that "[a] motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon.").

Finally, the fact that the trial court submitted the lesser-included offense of assault to the jury does not show insufficient evidence to support the aggravated assault charge. The jury was within its province to give little or no weight to Rodriguez's testimony and convict him of the original charge over the lesser-included one based upon the totality of the evidence. *See Brooks*, 323 S.W.3d at 899.

Accordingly, we overrule Rodriguez's sufficiency challenge.

### III. CRUEL AND UNUSUAL PUNISHMENT

In his second issue, Rodriguez contends that the his punishment of two years for the evading detention with a vehicle charge and twenty years for the aggravated assault with a deadly weapon is cruel and unusual under the Eighth Amendment of the United States Constitution and should therefore be reversed and remanded for a new trial.

### A. Discussion

As a pre-requisite to presenting an issue on appeal, the record must show that:

(1) The complaint was made to the trial court by a timely request, objection or motion that:

    (A) Stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

    (B) Complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure.

*See* TEX. R. APP. P. 33.1(a).

9

Here, the record shows that Rodriguez chose to represent himself pro se during the punishment stage of his trial. After the jury assessed punishment on Rodriguez, no subsequent request, objection, or motion was made to the trial court that stated that the punishment was cruel and unusual pursuant to the Eighth Amendment of the United States Constitution. Accordingly, we conclude that this issue was not properly preserved for our review. *See* TEX. R. APP. P. 33.1(a); *Keith v. State*, 975 S.W.2d 433, 433–34 (Tex. App.—Beaumont 1998, no pet.).[3] Rodriguez's second issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of May, 2012.

---

[3] While Rodriguez waived this issue on appeal, we note that Rodriguez's punishments were nonetheless within the statutory guidelines of the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 12.35 (state-jail felony punishment); 12.33 (second-degree felony punishment) (West 2011). Thus, assuming that Rodriguez properly preserved his complaint for appeal, we conclude that the sentences imposed were neither cruel nor unusual under the Eighth Amendment of the United States Constitution. *See Nunez v. State*, 110 S.W.3d 681, 682 (Tex. App.—Corpus Christi 2003, no pet.) (internal citations omitted) (holding that "punishment falling within the applicable range prescribed by the legislature is not excessive, cruel or unusual.").